UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| CALEB C., | |
| Plaintiff, | No. 23 CV 5039 |
| v. | Magistrate Judge McShain |
| FRANK BISIGNANO, COMMISSIONER OF SOCIAL SECURITY, | |
| Defendant. | |

**MEMORANDUM OPINION AND ORDER**

Plaintiff Caleb C.[1] appeals the Commissioner of Social Security's decision denying her application for benefits. For the following reasons, plaintiff's request for remand [20][2] is granted, defendant's motion for summary judgment [21] is denied, and the decision denying the application for benefits is remanded to the agency for further administrative proceedings. 42 U.S.C. § 405(g).

**Background**

On September 29, 2020, plaintiff protectively filed a Title II application for a period of disability and disability insurance benefits and a Title XVI application for supplemental security income, both alleging disability beginning September 26, 2020. [16-1] 25. Plaintiff's claims were denied initially on April 13, 2021, and upon reconsideration on August 23, 2021. [*Id.*] Plaintiff requested a hearing, which was held on March 14, 2022 before an administrative law judge (ALJ). [*Id.*] 25, 47–86. Plaintiff waived the right to representation and was not represented at the hearing. [*Id.*] 25, 50–51. On August 24, 2022, the ALJ issued an unfavorable decision finding plaintiff not disabled from September 26, 2020, the alleged onset date, through the date of the decision. [*Id.*] 25–39.

In the August 24, 2022 decision, the ALJ reviewed plaintiff's disability claim in accordance with the Social Security Administration's five-step, sequential evaluation process. *Fetting v. Kijakazi*, 62 F.4th 332, 336 (7th Cir. 2023); *Apke v. Saul*,

---

[1] Although plaintiff's legal name is used in the official and administrative records, the Court acknowledges plaintiff's chosen name, Lyall, and preference for female pronouns. [16-1] 25, 59–60.

[2] Bracketed numbers refer to entries on the district court docket. Referenced page numbers are taken from the CM/ECF header placed at the top of filings, except for citations to the administrative record [16], which refer to the page numbers in the bottom right corner of each page.

817 F. App'x 252, 255 (7th Cir. 2020); 20 C.F.R. § 404.1520. At step one, the ALJ found that plaintiff had not engaged in substantial gainful activity since September 26, 2020, the alleged onset date. At step two, the ALJ found that plaintiff has the following severe impairments: obstructive sleep apnea, obesity, bilateral hearing loss, major depressive disorder, generalized anxiety disorder, and gender dysphoria. The ALJ found that plaintiff's migraines and cubital tunnel syndrome were non-severe impairments. At step three, the ALJ found that plaintiff does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1. In assessing the four areas of functioning that make up the paragraph B criteria, the ALJ found that plaintiff has moderate limitations in all four areas. Before turning to step four, the ALJ determined that plaintiff has the residual functional capacity to perform medium work with the following limitations: The claimant can lift, carry, push, and/or pull 50 pounds occasionally and 25 pounds frequently, can stand or walk in combination for six hours in an eight-hour workday with normal breaks, and can sit for six hours in an eight-hour workday with normal breaks. The claimant can occasionally climb ladders, ropes and scaffolds, frequently stoop, kneel, crouch, and crawl, and frequently balance. The claimant must avoid more than occasional exposure to extreme cold and heat and hazards such as unprotected heights and machinery with moving mechanical parts. The claimant may be exposed to no more than a moderate level of noise. The claimant can understand and remember simple instructions and can sustain concentration persistence and pace for simple routine repetitive tasks with normal breaks. The claimant can have occasional interaction with coworkers, but may not perform tasks in teams or in tandem and cannot perform tasks requiring interaction with the general public. The claimant can make simple work related decisions and can adapt to changes in the work setting which are consistent with the aforementioned limitations. At step four, the ALJ concluded that plaintiff was unable to perform any past relevant work. At step five, the ALJ found that there are jobs that exist in significant numbers in the national economy that plaintiff could perform, including industrial cleaner and floor waxer. Accordingly, the ALJ found that plaintiff was not under a disability as defined in the Social Security Act from September 26, 2020 through the date of the decision.

The Appeals Council denied review on February 7, 2023, [16-1] 9, rendering the ALJ's decision the final decision of the Commissioner. *See* 20 C.F.R. §§ 404.955 & 404.981; *Gedatus v. Saul*, 994 F.3d 893, 898 (7th Cir. 2021). Plaintiff timely appealed to this Court [1],[3] and the Court has subject-matter jurisdiction to review the Commissioner's decision under 42 U.S.C. § 405(g).[4]

---

[3] On June 27, 2023, the Appeals Council granted plaintiff additional time to file her civil action for court review. [16-1] 1.

[4] The parties have consented to the exercise of jurisdiction in this case by a United States Magistrate Judge [11].

**Legal Standard**

The Court reviews the ALJ's decision deferentially to "ensur[e] that substantial evidence supported the ALJ's decision and that the ALJ applied the correct legal standards." *Morales v. O'Malley*, 103 F.4th 469, 472 (7th Cir. 2024) (citing *Stephens v. Berryhill*, 888 F.3d 323, 327 (7th Cir. 2018)). Substantial evidence is "not a high threshold: it means only such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Karr v. Saul*, 989 F.3d 508, 511 (7th Cir. 2021). "An ALJ need not specifically address every piece of evidence, but must provide a 'logical bridge' between the evidence and h[er] conclusions." *Bakke v. Kijakazi*, 62 F.4th 1061, 1066 (7th Cir. 2023) (quoting *Butler v. Kijakazi*, 4 F.4th 498, 501 (7th Cir. 2021)). "A reviewing court 'will not reweigh the evidence, resolve debatable evidentiary conflicts, determine credibility, or substitute [its] judgment for the ALJ's determination so long as substantial evidence supports it.'" *Chavez v. O'Malley*, 96 F.4th 1016, 1021 (7th Cir. 2024) (alteration in original) (quoting *Gedatus*, 994 F.3d at 900). Furthermore, the Court "will only overturn the ALJ's credibility determination if it is patently wrong, which means that the decision lacks any explanation or support." *Murphy v. Colvin*, 759 F.3d 811, 816 (7th Cir. 2014) (citation omitted). But where the ALJ's decision "lacks evidentiary support or is so poorly articulated as to prevent meaningful review, the case must be remanded." *Dallas H. v. O'Malley*, No. 22 C 50432, 2024 WL 1158378, at *3 (N.D. Ill. Mar. 18, 2024) (quoting *Steele v. Barnhart*, 290 F.3d 936, 940 (7th Cir. 2002)).

**Discussion**

Plaintiff argues that the ALJ's decision was not supported by substantial evidence because in assessing plaintiff's subjective symptoms, the ALJ improperly discounted plaintiff's allegations solely because they were allegedly not supported by the objective medical evidence. [20] 7. The "Court will uphold an ALJ's credibility determination unless that determination is 'patently wrong.'" *Wilder v. Kijakazi*, 22 F.4th 644, 653 (7th Cir. 2022) (quoting *Stepp v. Colvin*, 795 F.3d 711, 720 (7th Cir. 2015)). An ALJ's credibility determination is "patently wrong" where it lacks any explanation or support or is based upon errors of fact or logic. *See, e.g., Minnick v. Colvin*, 775 F.3d 929, 935 (7th Cir. 2015); *Murphy*, 759 F.3d at 816; *Elder v. Astrue*, 529 F.3d 408, 413–14 (7th Cir. 2008); *Allord v. Barnhart*, 455 F.3d 818, 821 (7th Cir. 2006) (collecting cases). Here, plaintiff asserts that the ALJ's analysis was legally insufficient and that the ALJ failed to provide any insight into whether/how she weighed the regulatory factors in SSR 16-3p or how these factors affected the ALJ's credibility determination. [20] 9.

"To determine the credibility of allegations . . . an ALJ may consider several factors, including objective medical evidence and any inconsistencies between the allegations and the record." *Zoch v. Saul*, 981 F.3d 597, 601 (7th Cir. 2020). However, "an ALJ may not discount a claimant's symptom statements 'solely because they are

3

not substantiated by objective evidence.'" *House v. Berryhill*, No. 17 C 3936, 2018 WL 3022678, at *3 (N.D. Ill. June 18, 2018) (quoting SSR 16-3p). "Because symptoms sometimes suggest a greater severity of impairment than can be shown by objective medical evidence alone," 20 C.F.R. § 404.1529(c)(3), "Social Security Ruling 16-3p explains [other] factors to consider in evaluating the intensity, persistence, and limiting effects of an individual's symptoms." *Wilder*, 22 F.4th at 653 (citing 2017 WL 5180304 (Oct. 25, 2017); 20 C.F.R. § 404.1529). These factors include daily activities; the location, duration, frequency, and intensity of symptoms; factors that precipitate and aggravate the symptoms; the type, dosage, effectiveness, and side effects of any medication an individual takes or has taken to alleviate symptoms; and treatment, other than medication, that an individual receives or has received. SSR 16-3p, 2017 WL 5180304, at *7–8; 20 C.F.R. § 404.1529(c)(3). The regulations mandate that an ALJ's "decision must contain specific reasons for the weight given to the individual's symptoms, be consistent with and supported by the evidence, and be clearly articulated so the individual and any subsequent reviewer can assess how the adjudicator evaluated the individual's symptoms." SSR 16-3p, 2017 WL 5180304, at *10. In other words, although the Court's review is deferential, "an ALJ still must competently explain an adverse-credibility finding with specific reasons 'supported by the record[.]'" *Engstrand v. Colvin*, 788 F.3d 655, 660 (7th Cir. 2015).

The ALJ concluded that plaintiff's "statements concerning the intensity, persistence and limiting effects of [her] symptoms [were] not entirely consistent with the medical evidence and other evidence in the record for the reasons explained in th[e] decision." [16-1] 33. It is difficult for the Court to review the ALJ's credibility determination because the decision does not separate this specific assessment from its summary and discussion of the record evidence. However, the Seventh Circuit has encouraged reviewing courts to read an ALJ's decision holistically and the Court will not find an ALJ's subjective symptom analysis was "patently wrong" merely because the decision does not include a dedicated section for that analysis. *See, e.g.*, *Zellweger v. Saul*, 984 F.3d 1251, 1252 (7th Cir. 2021); *Curvin v. Colvin*, 778 F.3d 645, 650 (7th Cir. 2015); *Rice v. Barnhart*, 384 F.3d 363, 370 n. 5 (7th Cir. 2004); *Orlando v. Heckler*, 776 F.2d 209, 213 (7th Cir. 1985). Nevertheless, when reviewed as a whole, the Court is not convinced that the ALJ's articulation of her credibility determination sufficiently allows the Court to trace the path of the ALJ's reasoning from evidence to conclusion and afford plaintiff meaningful review. Much of the ALJ's decision includes the standards and regulations that the ALJ is required to apply followed by conclusory statements as to her ultimate determinations without explaining the reasoning or analysis behind them. Prior to summarizing the record evidence, the ALJ's decision provided the following:

> The claimant does have impairments that reasonably warrant work restrictions. While the claimant has reported the inability to work due to a combination of physical and psychological symptoms, the objective medical evidence does not support the claimant's allegations of disabling

4

> impairments. Given these circumstances, it becomes necessary to consider the evaluation factors from Ruling SSR 16-3p along with the record as a whole in order to determine whether the claimant is as limited as she has alleged.
>
> . . . the undersigned finds that restricting the claimant to performing the range of work described above adequately addresses the location, duration, frequency, and intensity of the claimant's alleged symptoms as well as precipitating and aggravating factors.
>
> As for the claimant's statements about the intensity, persistence, and limiting effects of her symptoms, they are not consistent with the record as a whole. The record shows the claimant has been treated for, or diagnosed with, the above listed severe impairments. However, these impairments do not rise to the level of finding the claimant disabled.

[16-1] 33. The ALJ then stated the factors that she must consider in assessing plaintiff's subjective statements under 20 CFR 404.1529(c), 416.929(c), and SSR 16-3p. [*Id.*] 33–34.

For example, "in assessing a claimant's alleged symptoms, an ALJ 'is required to evaluate a claimant's activities of daily living and explain why the claimant's activities are inconsistent with her description of her symptoms.'" *Danny T. v. O'Malley*, No. 23 C 15008, 2024 WL 4170207, at *3 (N.D. Ill. Sept. 12, 2024) (quoting *Michelle M. L. v. Kijakazi*, No. 20 C 6793, 2022 WL 3297619, at *11 (N.D. Ill. Aug. 11, 2022)). *See* SSR 16-3p; 20 C.F.R. § 404.1529(c)(3)(i). Defendant argues that the ALJ did properly consider inconsistencies between plaintiff's daily activities and her reported symptoms, pointing out that the ALJ noted that despite reporting difficulty remembering and completing tasks, plaintiff reported that she could prepare meals, shop for groceries, read, pay her bills, and perform household chores. [22] 10 (citing [16-1] 30, 31). This discussion, however, occurred in the ALJ's assessment of the paragraph B criteria. The steps in the SSA's framework are distinct and separate, and an analysis of plaintiff's daily activities in the context of evaluating the paragraph B criteria does not take the place of a subjective symptom analysis in assessing plaintiff's residual functional capacity (RFC). The ALJ acknowledged this, explicitly stating that the "limitations identified in the 'paragraph B' criteria are not a residual functional capacity assessment but are used to rate the severity of mental impairments at steps 2 and 3" and that the "mental residual functional capacity assessment used at steps 4 and 5 . . . requires a more detailed assessment of the areas of mental functioning." [16-1] 31–32. In summarizing plaintiff's function report and hearing testimony, the ALJ did revisit plaintiff's activities, noting that plaintiff "is able to prepare meals, perform household chores, get around using public transportation, shop in stores or by computer, manage her finances, and read, play video games, watch videos, and play Dungeons & Dragons with her friends in her

5

spare time." [16-1] 32–33. This was all that the ALJ's decision provided in terms of assessing plaintiff's activities. But "a summary is not a substitute for analysis." *Charlnette R. v. Dudek*, No. 23-cv-03184, 2025 WL 933840, at *5 (N.D. Ill. Mar. 27, 2025) (quoting *Craig R. v. O'Malley*, No. 23 C 50035, 2024 WL 1363664, at *3 (N.D. Ill. Mar. 29, 2024)). *See Rebecca M. B. v. Kijakazi*, No. 22 C 41, 2023 WL 3168894, at *4 (N.D. Ill. Apr. 28, 2023) (noting that although "ALJs need only minimally articulate their analysis, it does not mean that ALJs can recite the cold medical record upfront, and then make conclusions without analysis later in the opinion"); *Shirley A. J. v. O'Malley*, No. 23-cv-113, 2024 WL 1341077, at *5 (N.D. Ind. Mar. 29, 2024) ("Listing or cataloging evidence from the record is not a substitute for analysis or explanation."). "ALJs must *explain* perceived inconsistencies between a claimant's activities and the medical evidence." *Jelinek v. Astrue*, 662 F.3d 805, 812 (7th Cir. 2011) (emphasis added). Contrary to defendant's argument, [22] 11, the Court does not accept the ALJ's inclusion of the word "however" as sufficient to meet this burden.

Furthermore, plaintiff argues that the ALJ's mere observations that plaintiff could engage in such activities as playing video games, watching videos, and playing Dungeons & Dragons does not take into account or articulate consideration of the limitations and qualifications plaintiff placed on these activities. For example, plaintiff describes these activities as her "coping mechanisms" and asserts that they distract herself from her anxiety, reduce the frequency and effect of her auditory hallucinations, and force herself to socialize and get encouragement from her friends. [20] 10 (citing [16-1] 74, 332). During the hearing, plaintiff also testified that she is still limited in her ability to play games, stating that she can do so for generally an hour or two but that she is usually "shifting positions constantly during that or otherwise losing interest just sitting there anxious that [she is] doing something wrong." [16-1] 74–75. Plaintiff also argues that the ALJ placed undue weight on plaintiff's household activities and failed to consider evidence of how limited plaintiff's preparation of meals and performance of household chores actually is:

> Similarly, while [plaintiff] can make some meals for herself, they are limited to sandwiches, canned, or boxed meals. . . . She sometimes tries cooking, but it depends on "whether or not [she] get[s] help or if someone else does" it. . . . Moreover, she "often forget[s] to feed [herself] or only eat[s] 1-2 times a day." . . . And while [plaintiff] does do laundry and other household chores, it is "not very often" and she needs encouragement, reminders, and help in case she forgets to do so.

[20] 9–10 (quoting [16-1] 329–30). And plaintiff asserts that in using public transportation, she frequently gets lost and forgets directions or where she is going. [*Id.*] 10; [23] 4. *See* [16-1] 68–69 (plaintiff's testimony that she has difficulty navigating public transportation to go "somewhere very far away" because she forgets directions and where she is going a lot and that she "generally will get disoriented from time to time"). Defendant asserts that these arguments constitute improper

nitpicking and that ALJs are not required to dissect every piece of evidence in the record. [22] 11–12. And the Court cannot reevaluate the facts, reweigh the evidence, or resolve debatable evidentiary conflicts, nor speculate on what effect such details and caveats as to plaintiff's activity levels could have on the ALJ's credibility determination. *Chavez*, 96 F.4th at 1021; *Gedatus*, 994 F.3d at 900; *Stephens*, 888 F.3d at 327. But it is undeniable that the ALJ's decision did not mention any of this identified information because the ALJ failed to provide any articulated reasoning behind her conclusion *at all*. And where the ALJ's decision "is so poorly articulated as to prevent meaningful review, the case must be remanded." *Dallas H.*, No. 2024 WL 1158378, at *3 (quoting *Steele*, 290 F.3d at 940).

Additionally, despite recognizing that there are several other factors listed in the regulations for ALJs to consider in assessing subjective symptoms, [16-1] 33–34, the ALJ's decision provided no analysis or consideration of additional factors. Throughout her summary of the record evidence as to plaintiff's mental impairments, the ALJ did refer to plaintiff's treatment history and the effects of medication. SSR 16-3p; 20 C.F.R. § 404.1529(c)(3)(iv)–(v). For example, the ALJ noted that plaintiff reported in November 2020 that she "felt medication was effective for her depression and anxiety" and that therapy records from January and April 2021 showed that plaintiff "reported medications were effective[,]" plaintiff's "symptoms were noted as improved, and no change in treatment was prescribed." [16-1] 35 (citing [*id.*] 645, 681–84). *But see* [*id.*] 72 (plaintiff's hearing testimony that she still has visual and auditory hallucinations with her medications). It is true that generally, "conditions that can be controlled with medication are not disabling." *Brown v. Saul*, 799 F. App'x 915, 919 (7th Cir. 2020) (citing *Prochaska v. Barnhart*, 454 F.3d 731, 737 (7th Cir. 2006)). ALJs are entitled to observe when an impairment is reasonably controlled by medication or evidence of an improved condition undercuts a plaintiff's testimony. *See, e.g.*, *Jones v. Astrue*, 623 F.3d 1155, 1161 (7th Cir. 2010) (noting that "discrepancies between the objective evidence and self-reports may suggest symptom exaggeration."); *Martin D. M. v. Kijakazi*, No. 22 C 5168, 2023 WL 8601522, at *4 (N.D. Ill. Dec. 12, 2023) ("The ALJ appropriately determined that the objective evidence of improvement and stability with medications suggested that Martin was not as limited as he claimed.").[5] But such reasoning or explanation was not included in the ALJ's decision. Merely mentioning these observations in a summary of the

---

[5] The Court also cautions, however, that "[t]here can be a great distance between a patient who responds to treatment and one who is able to enter the workforce[.]" *Scott v. Astrue*, 647 F.3d 734, 739 (7th Cir. 2011). "The key is not whether one has improved (although that is important), but whether they have improved enough to meet the legal criteria of not being classified as disabled." *Jarnutowski v. Kijakazi*, 48 F.4th 769, 773 (7th Cir. 2022) (quoting *Murphy*, 759 F.3d at 819). *See also Martz v. Comm'r, Soc. Sec. Admin.*, 649 F. App'x 948, 960 (11th Cir. 2016) (noting that "improvement is a relative concept and, by itself, does not convey whether or not a patient has recovered sufficiently to no longer be deemed unable to perform particular work on a sustained basis"); *Marva S. v. O'Malley*, No. 21 CV 5922, 2025 WL 27490, at *4 (N.D. Ill. Jan. 3, 2025) (same). This can be an especially crucial consideration in the mental health context. *See, e.g.*, *Phillips v. Astrue*, 413 F. App'x 878, 886 (7th Cir. 2010); *Bauer v. Astrue*, 532 F.3d 606, 609 (7th Cir. 2008).

record evidence is not an adequate substitute for analysis and creating a logical bridge between evidence and conclusions. As such, it is not clear that the ALJ included this inference in reaching her decision and the Court "can review only the reasons an ALJ uses to support her conclusions." *Brown*, 799 F. App'x at 919 (citing *Shauger v. Astrue*, 675 F.3d 690, 695–96 (7th Cir. 2012)).

Furthermore, the ALJ even acknowledged that plaintiff experiences an "exacerbation of her symptoms without medication." [16-1] 36.[6] *See also* [*id.*] 35 (noting that plaintiff presented to the emergency department in January 2022 for "a panic attack and difficulty managing her anxiety" and that plaintiff "explained she had run out of her medications, and she requested a refill"), 36–37 (stating that "the January 2022 emergency department presentation shows the claimant's anxiety had worsened without medication"). But that is where the ALJ's discussion ended. The ALJ did not comment on the stability of plaintiff's access to her necessary medications, indicate how this may affect plaintiff's ability to sustain full-time employment, or consider reasons that plaintiff might not be compliant with taking her medications or might not have access to them. Courts and SSR 16-3p recognize a variety of reasons why individuals do not comply with or seek treatment in a manner consistent with their complaints, including lack of insurance, lack of access, inability to afford treatment, and side effects. *See, e.g.*, SSR 16-3p, 2017 WL 5180304, at *9–10; *Murphy*, 759 F.3d at 816; *McClesky v. Astrue*, 606 F.3d 351, 352 (7th Cir. 2010); *Orienti v. Astrue*, 958 F.Supp.2d 961, 977 (N.D. Ill. 2013) ("ALJs have a duty to consider factors like inability to travel, mental illness, or economic constraints that may have prevented claimants from seeking receiving [sic] medical care."). Plaintiff argues that at times, she has struggled to maintain consistent treatment because of insurance issues, moving, and costs. [20] 4 n.4 (citing [16-1] 60, 73, 599, 702, 726). *See also* [16-1] 71 (describing her difficulties with getting refills during "the middle of Covid"), 73 ("And I have a therapist but again I didn't know Medicaid would've been offered to me so I was unable to see the therapist unless my mom helped me pay for it.").[7] Plaintiff testified at the hearing that she needed to get her medications adjusted again and explained what happens when she is not on her medications, such as when she ended up in the emergency room in January 2022: "[T]he hallucinations came back in full swing and depression was bad and I had shakes." [16-1] 71.

---

[6] These observations from the ALJ as to plaintiff's medications relate only to plaintiff's mental impairments. As to plaintiff's physical impairments, the ALJ merely noted plaintiff's testimony that she "takes over-the-counter pain medication." [16-1] 33. *See* [*id.*] 61, 64–65 (plaintiff's hearing testimony as to her use of over-the-counter pain medications and their effectiveness).

[7] Plaintiff's difficulty with accessing treatment due to costs and insurance issues is a recurring theme throughout her hearing testimony and is not limited to her mental impairments. *See* [16-1] 57 (stating that she has not been seen for her hearing recently because she has not been able to afford it), 60 (stating that she has not been able to get her cubital tunnel syndrome "properly diagnosed due to the low funds and only getting on Medicaid as of January" 2022), 62 ("I haven't really had the opportunity to go out and see many doctors."), 66 (stating that she does not use a CPAP machine for her mild sleep apnea because she has been unable to afford one), 68 (stating that she is "barely able to afford hearing aids due to insurance policies").

8

Evidence of the exacerbated symptoms that plaintiff experiences when she does not have access to medication may also relate to a "gap in the record" noted by the ALJ. [16-1] 35. The ALJ observed that there are therapy records from April 2021 but then no records for mental health treatment until a January 2022 intake evaluation, which showed "increased symptoms of depression and anxiety as she had run out of medications while moving." [*Id.*] (citing [*id.*] 702). Considering that the ALJ's decision evaluated September 26, 2020, the alleged onset date, through August 24, 2022, the date of the decision, a gap from April 2021 to January 2022 is a significant portion of the relevant period. Yet the ALJ did not provide any further discussion of this treatment gap or question plaintiff about it at the hearing, nor is it clear whether the ALJ only noted it in summarizing the medical record or if the ALJ considered this point in making a credibility determination.

The Court acknowledges Seventh Circuit case law stating that "flaws in the ALJ's reasoning are not enough to undermine the ALJ's decision that [a claimant] was exaggerating her symptoms" because "[n]ot all of the ALJ's reasons must be valid as long as *enough* of them are[.]" *Halsell v. Astrue*, 357 F. App'x 717, 722–23 (7th Cir. 2009) (emphasis in original) (citing *Simila v. Astrue*, 573 F.3d 503, 517 (7th Cir. 2009); *Shramek v. Apfel*, 226 F.3d 809, 811 (7th Cir. 2000)). *See Tutwiler v. Kijakazi*, 87 F.4th 853, 859 (7th Cir. 2023) ("Although the ALJ might have erred in his analysis of some factors, enough of them had adequate supporting evidence for this court to uphold his credibility determination.").[8] And ALJs "are subject to only the most minimal of articulation requirements." *Warnell v. O'Malley*, 97 F.4th 1050, 1053 (7th Cir. 2024). However, ALJs are still required to "provide an explanation for how the evidence leads to their conclusions that is sufficient to allow . . . a reviewing court, to assess the validity of the agency's ultimate findings and afford [the appellant] meaningful judicial review." *Id.* at 1054 (second alteration in original) (citation omitted). Here, the ALJ's decision failed to sufficiently explain the ALJ's reasoning and instead primarily amounted to conclusory statements and a recitation of the record evidence without engaging in analysis of that evidence.

The Court cannot find that any error in the ALJ's credibility determination is harmless. "An erroneous credibility finding requires remand unless the claimant's testimony is incredible on its face or the ALJ explains that the decision did not depend on the credibility finding." *Engstrand*, 788 F.3d at 660 (quoting *Pierce v. Colvin*, 739 F.3d 1046, 1051 (7th Cir. 2014)). *See also Allord v. Barnhart*, 455 F.3d 818, 821–22 (7th Cir. 2006) (identifying these as the two conditions in which an error in the credibility determination can be harmless); *Darlene M. v. Kijakazi*, No. 19 CV 6389, 2021 WL 3773291, at *4 (N.D. Ill. Aug. 25, 2021). Neither of these two circumstances applies to the present case. Furthermore, defendant does not argue that any error in the ALJ's evaluation is harmless and such an argument is therefore forfeited. *James*

---

[8] *See also, e.g.*, *Romona R. B. v. O'Malley*, No. 23-cv-50183, 2024 WL 4226277, at *5 (N.D. Ill. Sept. 18, 2024); *Brenda L. v. Saul*, 392 F.Supp.3d 858, 870 (N.D. Ill. 2019).

9

*M. v. Kijakazi*, No. 20 CV 2082, 2023 WL 3652862, at *7 n.6 (N.D. Ill. May 25, 2023); *Arej v. Sessions*, 852 F.3d 665, 669 (7th Cir. 2017) ("The government has not raised harmless error here, so that argument is waived.") (Sykes, J. concurring).

## Conclusion

For the foregoing reasons, plaintiff's request for remand [20] is granted, the decision of the SSA is reversed, and, in accordance with the fourth sentence of 42 U.S.C. § 405(g), this case is remanded for further proceedings consistent with the Court's ruling.

_____
**HEATHER K. McSHAIN**
**United States Magistrate Judge**

**DATE: September 22, 2025**